

**FILED**
May 12 2015, 10:03 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANTS

Patrick R. Hess
Brian C. Heck
Beckman Lawson, LLP
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEES
APEX WIND ENERGY, APEX
CLEAN ENERGY, AND WELLS
COUNTY WIND II

Robert W. Eherenman
Andrew L. Teel
Haller & Colvin, P.C.
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE
WELLS COUNTY AREA PLAN
COMMISSION

Colin Z. Andrews
Carnall, Andrews & Crell, P.C.
Bluffton, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

James E. and Tamara L.
Dunmoyer, Jr., Linus and Karen
Harrold, Theron and Clara
Miller, Clarence and Beverly
Zimmerman, individually and as
Trustees of the Clarence
Zimmerman and Beverly
Zimmerman Revocable Living
Trust, Michael and Barbara
Butche, and Jeffrey and Janet
Harshman,

*Appellants-Petitioners,*

May 12, 2015

Court of Appeals Case No.
90A02-1407-MI-460

Appeal from the Wells Superior
Court

The Honorable Thomas M. Hakes,
Special Judge

Cause No. 90D01-1309-MI-23

v.

Wells County, Indiana Area
Plan Commission, Wells County
Wind II, LLC, Apex Clean
Energy Holdings, LLC, and
Apex Wind Energy, Inc.,

*Appellees-Respondents.*

**Kirsch, Judge.**

The Wells County, Indiana Area Plan Commission ("Plan Commission") approved a petition for the development of a large wind energy conversion system ("WECS") project that was filed by Wells County Wind II, LLC, Apex Clean Energy Holdings, LLC, and Apex Wind Energy, Inc. (collectively, "Apex"),[1] thereby allowing the construction of approximately sixty-eight wind turbines on private property located in southern Wells County, Indiana ("Zoning Decision").[2] Adjacent landowners, James E. and Tamara L. Dunmoyer, Jr.; Linus and Karen Harrold; Theron and Clara Miller; Clarence

---

[1] We note that Apex's petition for approval of a WECS project was submitted solely in the name of Wells County Wind II, LLC. *Appellants' App.* at 650. The petition, however, was submitted by means of a cover letter written on Apex Wind Energy letterhead and signed by the President of Apex Wind Energy. *Id.* at 649. Wells County Wind II is a subsidiary of Apex Wind Energy and was formed specifically for this WECS project. *Id.* at 1190. It is not clear, however, what the relationship is between those parties and Apex Clean Energy Holding, LLC. In their brief, the Appellees refer to all three WECS entities, collectively, as "Apex." *Appellees' Br.* at 1. We will do the same.

[2] Apex was permitted to construct wind turbines on private property only with the permission of the property owners.

and Beverly Zimmerman, individually and as Trustees of the Clarence Zimmerman and Beverly Zimmerman Revocable Living Trust; Michael and Barbara Butche; and Jeffrey and Janet Harshman (collectively, "Landowners"), filed with the trial court a two-count petition. In Count I, Landowners requested judicial review of the Zoning Decision,[3] and in Count II they sought declaratory judgment. Landowners now appeal the trial court's grant of summary judgment in favor of Apex and the Plan Commission as to Count I. Landowners raise four issues, which we consolidate and restate as whether the trial court erred in granting partial summary judgment in favor of the Plan Commission and Apex upon a finding that Landowners were not aggrieved and not prejudiced by the Zoning Decision.

We affirm and remand with instructions.[4]

## Facts and Procedural History

Development in Wells County, Indiana, is governed by the "Wells County Zoning and Floodplain Management Ordinance" ("the Zoning Ordinance"). The Zoning Ordinance, which was adopted by the legislative bodies of Wells

---

[3] Section 7-04(3) of the Wells County Zoning and Floodplain Management Ordinance provides: "Each decision of the Plan Commission . . . is subject to review by certiorari. Each person aggrieved by a decision of the Plan Commission . . . may file with the Circuit or Superior Court of the county in which the premise affected is located, a verified petition setting forth that the decision is illegal in whole or in part and specifying the grounds of the illegality." *Appellants' App*. at 453.

[4] We commend the trial court for the clarity and thoroughness of its written judgment, which have significantly assisted our appellate review.

County, Indiana,[5] established an Area Planning Department consisting of the Plan Commission, a Plat Committee, a Board of Zoning Appeals ("BZA"), an Executive Director ("PC Director"), and "such staff as the Plan Commission considers necessary." *Appellants' App.* at 439.

### *Zoning Ordinance*

[4] The Zoning Ordinance sets forth the purpose (Article 2) and administration (Article 4) of the ordinance; the composition, appointments, and jurisdiction of the Plan Commission, Plat Committee, and BZA (Article 3); and the guidelines for meeting minutes (Article 5), findings of fact and rulings (Article 6), and violations and appeals (Article 7). *Id*. at 438-54. Additionally, the Zoning Ordinance sets forth guidelines pertaining to zoning districts (Article 9), general regulations (Article 11), performance standards (Article 12), development plans (Article 14), and development criteria for a WECS project (Article 15). *Id*. at 458-90.

[5] Article 9 describes the zoning districts and the specific "permitted uses" allowed in each. *Id*. at 461-63. The zoning districts include, "A-R," Agriculture-Residential; "A-1," Agriculture-Intensive; "I-1," Industrial; "I-2," Industrial; "B-1," Central Business District; "C-1," Conservation; and "R-1," Residential.

---

[5] The local legislative bodies of Wells County consist of: County Commissioners of Wells County; Common Council of the City of Bluffton, Indiana; Town Council of Ossian, Indiana; Town Council of Poneto, Indiana; Town Council of Uniondale, Indiana; Town Council of Vera Cruz, Indiana; and Town Council of Zanesville, Indiana. *Appellants' App.* at 433-36.

*Id.* at 458. Large WECS projects[6] are permitted uses in four zoning districts, including A-1. *Id.* at 463. Apex proposed to build a WECS project on land in Wells County zoned as A-1. Other permitted uses in A-1 districts include: concentrated animal feeding operation control, airports, grain elevators, manure lagoons, mineral excavation, communication towers, and commercial bulk fuel storage. *Id.* at 461-63.

[6] Article 14 of the Zoning Ordinance addresses development plans in general, including the purpose, jurisdiction, procedure, and requirements of an acceptable plan. Under section 14-05, a Development Plan may be approved only if it meets or complies with certain requirements, including:

> (1) The proposed Development Plan must be *compatible with surrounding land uses*.
>
> (2) The proposed Development Plan shall be sited, oriented, and landscaped to produce a *harmonious relationship* of building and grounds to adjacent buildings and properties.
>
> (3) Land uses between structures located upon the subject parcel, scale, building materials, and building style of the proposed development shall be sufficient to allow for *total visual impression* and environment that is consistent with the environment of the neighborhood.
>
> . . . .

*Appellants' App.* at 1406.

---

[6] The Zoning Ordinance addresses four kinds of WECS: WECS Testing Facility; WECS, Large; WECS, Medium; and WECS, Small. *Appellants' App.* at 463. Apex's project is for the development of a large WECS project; therefore, for ease of reference we will refer to a large WECS as merely "WECS."

[7] Article 15 of the Zoning Ordinance, which specifically applies to "Wind Energy Conversion Systems (WECS) and Communication Towers," likewise sets forth its purpose, jurisdiction, procedures, requirements, and states as its purpose, to "facilitate the development and growth of WECS Projects and Communication Towers while preserving public health, welfare, and safety for all real estate owners and occupants." *Id.* at 481. A party may not construct or operate a WECS project in Wells County without having fully complied with the provisions of Article 15 and any additional requirements incorporated into that article by reference. *Id.*

[8] Section 15-03(5), regarding review and approval, incorporates Article 14 and provides:

> Except as expressly provided otherwise in this Article, review and approval of an application for Development Plan Approval for a WECS Project . . . shall be conducted in the manner provided in, and in accordance with the requirements of, Article 14 with respect to Development Plans generally.

*Id.* at 482.

[9] Section 15-05 sets forth the specific requirements with which a WECS project must comply. Section 15-05(2) requires a WECS project to have a setback "from a property line a distance of 1.1 times the length of the highest point reached by the [WECS] blade" of the turbine in question, and "from all existing residential dwellings a distance of 1000 feet." *Id.* at 483. These two requirements are further limited because the "setback requirement is reciprocal" to all future "property lines" and "residential dwellings" as approved, "unless a

fully executed and recorded written waiver agreement is secured from the WECS Project Owner and Operator" and adjoining landowners, and the variance is granted by the BZA. *Id.* That section also requires that each individual turbine have a setback "from all public road right-of-ways a distance equal to a multiple of 1.1 times the length of the highest point reached by the [WECS] blade" in question," and from certain cities and towns a distance designated by the Zoning Ordinance. *Id.* at 483-84. WECS "guy wires" and "horizontal extensions" also must be set back twenty feet from all property lines and public road right-of ways. *Id.* at 484.

[10] Sections 15-05(3) and (4) set forth the specific guidelines that a WECS project must meet, including: (1) color and finish for each turbine; (2) safety design and installation standards, including, braking systems, climb prevention measures, blade clearance, compliance with Federal Aviation Administration rules for height and lighting, and proof of approvals of other local, state, and federal agencies; (3) hazard signage; and (4) electrical components. *Id.* at 486-87. Further, Section 15-05(4) specifies that each WECS project: (1) shall not make noise exceeding fifty decibels on the "DBA scale as measured at the nearest existing residential dwelling"; (2) "shall be designed to minimize shadow flicker on an existing residential dwelling"; (3) shall not permit signs on a turbine, except to identify the WECS manufacturer or for safety purposes; (4) "shall be designed, constructed, and operated so not to interfere with local broadcast television, telecommunication, communication, or microwave transmission"; and (5) shall provide for the prompt removal from the site of all

solid waste and hazardous materials in accordance with applicable local, state, and federal laws. *Id*. at 487.

[11] Before the Plan Commission can grant approval, section 15-05(5) requires agreement among the local legislative body, the local fiscal body, and the owner operator regarding the decommissioning of the WECS project, including the anticipated manner and cost of removal. *Id*. Pursuant to section 15-05(7), the WECS operator must submit to the Plan Commission an agreement for use, repair, and improvement of the roads, and repair of the drainage facilities. *Id*. at 488. Sections 15-05(8), (9), and (10), respectively, require an operator to submit: a Project Layout Plan showing the general layout of the WECS project; a Utility Layout Plan showing the general layout of the WECS project's collection and distribution systems, including required easements; and a Noise and Shadow Flicker Analysis Plan, including accompanying data. *Id*. at 489. Finally, section 15-05(13) concludes with: "Any applicable provisions, rules, restrictions, standards, and conditions imposed by other provisions or Articles of this Zoning Ordinance are incorporated by reference as development requirements. . . ." *Id*.

### *Approval of Development Plan*

[12] To obtain approval to build a WECS project, an operator must submit a development plan and obtain the Plan Commission's approval. *See id.* at 478 (under § 14-02(1)(J), development plan is required for new construction or expansion of a WECS project). In March 2013, Apex asked the Plan Commission to approve its development plan for a WECS project in a part of

Wells County zoned as A-1. *Id.* at 566-648. Apex's development plan, which was about 80-pages long, set forth the manner in which Apex planned to comply with the Zoning Ordinance. During the Plan Commission's April 2013 meeting, PC Director Michael W. Lautzenheiser reported that four proposed turbines did not meet the 1.1 times setback from the property line, fourteen residences would have over thirty hours per year of shadow flicker, and one turbine did not meet the 1000 foot setback. *Id.* at 393. At that time, the PC Director advised the Plan Commission that it had the option of rejecting the plan, because some of the items did not meet the ordinance, or it could approve the development plan with the condition that those items in violation would be fixed or removed. *Id.* The Plan Commission took no action on this petition and, as permitted by Section 15-09 of the Zoning Ordinance, Apex submitted an amended development plan in May 2013. *Id.* at 1419-1504.

[13] After reviewing the amended development plan ("Development Plan"), the PC Director prepared a "Non-Binding Opinion" for use at the Plan Commission's next meeting. *Id.* at 1388-91. In that opinion, the PC Director observed that one of the turbines was "located in the 1/100 percent chance floodplain," and would have to be moved in Apex's final plan. The PC Director concluded that, with that exception, the Development Plan met the permitted use requirements and the lot requirements because Article 15 was controlling. *Id.* at 1390. Additionally, the PC Director noted, "This is by far the best filing we have received as it concerns ordinance compliance." *Id.* at 1391.

[14] More than three hundred interested parties attended the Plan Commission's June 2013 public hearing, most of whom opposed approval of the WECS project. Remonstrators, including Landowners, testified that the Development Plan should be denied. Minutes of that meeting reflect that Patrick R. Hess ("Hess"), an attorney for Landowners, testified that his clients opposed the reciprocal setback "because it is a taking of property." *Id*. at 290. Additionally, Hess argued that the Development Plan must comply with the requirements of not only Article 15, but also with Article 14. Specifically, Hess maintained that Apex had the burden to show how the WECS project is compatible with surrounding land use, and that Apex's petition should be denied based on "not meeting the ordinance requirements in article 14." *Id*.

[15] The Plan Commission discussed the reciprocal setback rule, recognizing that it impacts safety concerns by preventing people from building too close to a wind turbine, while also impacting property concerns because it limits "people's rights to use their property." *Id*. at 294. The PC Director asked for input from the members of the Plan Commission. "Many of the board members stated that they felt the petition meets the ordinance but it is unpopular with the majority of citizens, who they want to support." *Id*. A few members were still unsure on what they thought, and one board member expressed that he thought the petition did not comply with Article 14. *Id*.

[16] The Plan Commission discussed the height restriction for A-1 zoning, which was followed by "comments on if the turbines were harmonious and compatible with the surrounding area." *Id*. Jim Berger, a Plan Commission

member, made a motion to deny Apex's Development Plan due to the fact that Section 14-05(1), (2), and (3) were not met; those requirements required that: (1) Development Plan be compatible with surrounding land uses; (2) Development Plan be sited, oriented, and landscaped to produce harmonious relationship to adjacent buildings and properties; and (3) land uses between structures allow a total visual impression consistent with the neighborhood. *Id.* at 479. Berger's motion to deny the Development Plan did not pass. *Id.* at 295. A vote regarding whether to approve Apex's Development Plan was tabled until a future meeting.

[17]   A large crowd appeared for the Plan Commission's meeting in July 2013. Concerned that the open door law would be violated if the crowd could not hear or see the proceedings due to the small venue, the Plan Commission continued the meeting to a later date. *Id.* at 307. Apex's WECS project was next discussed at a meeting in August 2013. Plan Commission member Berger again "restated some of his comments from the June [] 2013 meeting[,] . . . [and] asked the board to review certain areas of the ordinance . . . ." *Appellants' App.* at 314. Becoming more specific, "[h]e stated that [Apex] is responsible for following other articles in the ordinance not just the WECS ordinance [Article 15] because it is a development plan also." *Id.* Berger again argued that Apex failed to meet the requirements of article 14-05(1), (2), and (3). At the close of the meeting, the Plan Commission voted six to three to approve Apex's Development Plan. *Id.* at 315. The Plan Commission set forth its written findings and rulings in the Zoning Decision. *Id.* at 324-34.

[18] Landowners filed a petition in the Wells Superior Court on January 31, 2014,[7] naming the Plan Commission and Apex as Respondents. *Appellants' App*. at 235. In Count I, Landowners sought judicial review of the Zoning Decision on the basis that it was not supported by substantial evidence, stating, "[T]he Plan Commission erred in approving the Development Plan because . . . [it] did not satisfy all of the necessary requirements for development plan approval under the terms of the Zoning Ordinance." *Id*. at 245.

[19] Landowners noted that the Development Plan failed: to comply with floodplain management (Section 14-05(7)(A)); to present a traffic management plan (Section 14-05(4)); to enter into contracts with utilities or political entities to install or extend necessary services (Section 14-05(6)); and to comply with performance standards of air, water, waste matter, and fire protection (Sections 12-07, 12-09, 12-10, and 12-11 respectively). *Id*. at 246, 248-50. Additionally, they argued that the Plan Commission made no findings regarding whether the WECS project was compatible with surrounding land use, harmonious with adjacent buildings and properties, and visually consistent with the environment of the neighborhood as required by section 14-05(1), (2), and (3), respectively. *Id*. at 247-48.

---

[7] The January 2014 petition was in fact an amended petition to their initial September 2013 petition.

[20] In Count II, Landowners sought declaratory judgment that the reciprocal setback provision in Article 15 of the Zoning Ordinance was invalid and should be stricken from the Zoning Ordinance because it constituted a taking of private property without just compensation. *Id*. at 251. Landowners argued that, once the reciprocal setback provision was invalidated, the Plan Commission's approval of Apex's petition for the WECS project under that Article, would be void. *Id*. at 252.

[21] The Plan Commission and Apex (together, "Respondents") filed separate answers to the petition for judicial review. As part of their answer, the Plan Commission denied Landowners' allegations that Apex failed to meet the requirements pertaining to air quality, water quality, waste matter, and fire protection. *Id*. at 249, 349. Thereafter, Respondents filed a joint motion for partial summary judgment, contending that, as a matter of law, Landowners lacked standing as to Count I because they "failed to specifically allege facts that are sufficient to show that they are 'aggrieved' by the Plan Commission's ministerial act of approving Apex's Development Plan."[8] *Id*. at 27-28. The trial court held a hearing on Respondents' motion for partial summary judgment and concluded that it had jurisdiction over both the parties and the subject matter. Following the hearing, the trial court granted Respondents' motion for

[8] Pursuant to Indiana Code section 36-7-4-1602, a person is entitled to judicial review of a final zoning decision if that person has standing pursuant to section 1603, has exhausted all administrative remedies pursuant to section 1604, has filed a petition for review pursuant to section 1605, and has timely filed the record required for review pursuant to section 1613. Apex contends that Landowners did not have standing to appeal; however, no claim is made regarding a deficiency regarding the other requirements.

partial summary judgment only as to Count I, thus effectively upholding the Plan Commission's approval of Apex's Development Plan. *Id*. at 19. In reaching its decision, the trial court observed that Landowners have the burden of proving both that they are "'aggrieved parties' under I.C. § 36-7-4-1603," and "have been prejudiced by an illegal zoning decision under I.C. § 36-7-4-1614(d)." *Id*. Additionally, Landowners have the burden of proving that the Plan Commission's decision is arbitrary, capricious, an abuse of discretion, not in accordance with law, unconstitutional, or not supported by substantial evidence. *Appellants' App*. at 19 (citing I.C. § 36-7-4-1614(d)(1)-(5)).

[22] The trial court observed that Landowners' claim of being aggrieved and prejudiced arose from the Plan Commission's act of approving the Development Plan because that approval resulted in turbines being in close proximity to Landowners' homes, a decrease in property value, homeowners being subjected to shadow flicker and noise from the wind turbines, and a loss of use and enjoyment of land. Noting that a WECS is a permitted use on land zoned A-1 and that Apex's Development Plan met or exceeded the WECS development requirements about which Landowners complained, the trial court determined that Landowners were neither aggrieved nor prejudiced by the approval of Development Plan. Landowners now appeal.

# Discussion and Decision

## *Standard of Review*

[23] Landowners contend that the trial court erred when it granted summary judgment in favor of Respondents as to Count I by finding that Landowners were not aggrieved and not prejudiced by the Plan Commission's approval of Apex's Development Plan in Wells County. When reviewing a grant or denial of summary judgment, the standard of review is the same as the standard governing summary judgment in the trial court: whether there is a genuine issue of material fact, and whether the moving party is entitled to judgment as a matter of law. *N. Ind. Pub. Serv. Co. v. Bloom*, 847 N.E.2d 175, 180 (Ind. 2006). We liberally construe pleadings, affidavits, testimony, and other evidence in a light most favorable to the non-moving party. *Id*. Questions of law we review de novo, and the party appealing the grant of summary judgment has the burden of persuading this court that the trial court's ruling was improper. *Floyd Cnty. v. City of New Albany*, 1 N.E.3d 207, 213 (Ind. Ct. App. 2014), *trans. denied*; *Bd. of Comm'rs of Hendricks Cnty. v. Town of Plainfield*, 909 N.E.2d 480, 485-86 (Ind. Ct. App. 2009). We will affirm the trial court's grant of summary judgment if it is sustainable on any theory or basis in the record. *Floyd Cnty.*, 1 N.E.3d at 213; *Beck v. City of Evansville*, 842 N.E.2d 856, 860 (Ind. Ct. App. 2006), *trans. denied*.

## *Judicial Review of Zoning Decisions*

[24] Indiana Code sections 36-7-4-1600 through -1616 ("the 1600 Series") "establish[] the exclusive means for judicial review of zoning decisions[.]"[9] Ind. Code § 36-7-4-1601(a). The 1600 Series sets forth the procedure that a petitioner must follow. Section 1602 entitles a petitioner to judicial review upon a showing that the petitioner qualifies under: (1) Section 1603 concerning standing; (2) Section 1604 concerning exhaustion of administrative remedies; (3) Section 1605 concerning the time for filing a petition for review; and (4) Section 1613 concerning the time for filing the board record for review. *See Town of Pittsboro Advisory Plan Comm'n v. Ark Park*, LLC, 26 N.E.3d 110, 117 (Ind. Ct. App. 2015). Section 1614 allows a trial court to grant relief from the zoning decision only if the court determines that the petitioner has been prejudiced by a zoning decision that is: (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) contrary to constitutional right, power, privilege, or immunity; (3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (4) without observance of procedure required by law; or (5) unsupported by substantial evidence. Relevant to this appeal, the petitioners must set forth specific facts in their petition to demonstrate that they (1) are entitled to obtain judicial review

---

[9] When the General Assembly amended the Zoning Enabling Act in 2011, it brought the judicial review concepts from the Administrative Orders and Procedures Act ("AOPA") into the zoning arena. *Howard v. Allen Cnty. Bd. of Zoning Appeals*, 991 N.E.2d 128, 130 (Ind. Ct. App. 2013) (citing *Habig v. Bruning*, 613 N.E.2d 61, 64 (Ind. Ct. App. 1993), *trans. denied*). Accordingly, the judicial review provisions of the 1600 Series of the Zoning Enabling Act are interpreted in the same manner as the relevant provisions of the AOPA and rely on case law established under the AOPA. *Id.*

under Section 1602 and (2) have been prejudiced by one or more of the grounds in section 1614. I.C. § 36-7-4-1607(b)(5), (6).

[25] The trial court reviewed copious quantities of designated evidence before distilling those documents into the following "undisputed facts":

> 21. Petitioners alleged in the Amended Petition that they were "aggrieved and prejudiced" by the Plan Commission's decision to approve the WECS Development because of the close proximity of the wind turbines to their homes and property.
>
> 22. Petitioners alleged that the Plan Commission's approval of the WECS Development Plan would decrease their property values.
>
> 23. Petitioners claimed that they would suffer noise because of the wind turbines.
>
> 24. Petitioners alleged that they would incur shadow flicker from the wind turbines.
>
> 25. Petitioners alleged in their Amended Petition that they would suffer a loss of enjoyment caused by the wind turbine setbacks in the Zoning Ordinance.
>
> . . . .
>
> 32. All of the wind turbines in the WECS Development exceed the Zoning Ordinance's setback of 1000 feet and are further away from the Petitioners' dwellings than the required 1000-foot setback.
>
> 33. Apex's WECS Development Plan meets the Zoning Ordinance requirements regarding sound. The Zoning Ordinance requires that a WECS produce no more than 50 decibels of sound, and Apex's WECS Development Plan will produce no more than 48 decibels of sound.
>
> 34. Apex's WECS Development Plan meets the Zoning Ordinance requirements regarding shadow flicker. Apex agreed to minimize shadow flicker to no more than thirty (30) hours per year.
>
> 35. Article 15 of the Zoning Ordinance does not permit the Plan Commission to weigh the issues of property value or loss of enjoyment when making its ministerial decision to approve a WECS Development Plan.

> 36. Petitioners agree that Apex's WECS Development Plan satisfied the Zoning Ordinance's development requirements in Article 15 regarding proximity, noise, and shadow flicker.

*Appellants' App*. at 17-18 (internal citations omitted).

From these facts, the trial court determined, and the parties do not dispute, that it had jurisdiction over the parties and the subject matter of the cause of action. The trial court also noted that, in order to prevail, Landowners "have the burden of proving that they are 'aggrieved parties' under I.C. § 36-7-4-1603, and that they have been prejudiced by an illegal zoning decision under I.C. § 36-7-4-1614(d). *See* I.C. §36-7-4-1614(a) (stating that the burden of demonstrating the invalidity of a zoning decision is on the party asserting the invalidity)." *Id*. at 19. In other words, Landowners have the burden of proving both that they have standing and also that they were prejudiced by a Planning Commission zoning decision that was arbitrary, capricious, an abuse of discretion, or not in accordance with law; unconstitutional; in excess of statutory jurisdiction, authority, or limitation, without observance of procedure; or not supported by substantial evidence. I.C. § 36-7-4-1614(d)(1)-(5).

### *Zoning Enabling Act*

Prior to reaching its legal conclusions, the trial court explained the context in which its decision was being made. Highlighting the impact of Indiana Code sections 36-7-4-1401 through 1406 ("the Zoning Enabling Act"), the trial court noted:

> 39. Here, the Plan Commission's zoning decision to approve Apex's WECS Development Plan was a ministerial decision to approve a

development plan for a permitted use under [the Zoning Enabling Act]. The Plan Commission is required to review a development plan to determine if the development plan satisfies the concrete development requirements specified in the Zoning Ordinance.

*Appellants' App.* at 19.

[28]  The Zoning Enabling Act "specifies the requirements by which a local government may designate zoning districts in their jurisdiction." *The Kroger Co. v. Plan Comm'n of Town of Plainfield*, 953 N.E.2d 536, 540 (Ind. Ct. App. 2011), *trans. denied; Hendricks Cnty. Bd. of Comm'rs v. Rieth-Riley Constr. Co.*, 868 N.E.2d 844, 849 (Ind. Ct. App. 2007). Through the Zoning Enabling Act, the General Assembly has "permit[ted] local legislative bodies to divide their jurisdiction into zoning districts and mandates property owners to submit a development plan before engaging in a project in the particular zoning district." *Id.* at 849-50 (citing I.C. § 36-7-4-1401.5). To establish these zoning districts, the Zoning Enabling Act requires the legislative body, here, the local legislative bodies of Wells County—"to enact a local ordinance that '*must specify*' the '[d]evelopment requirements that must be satisfied before the plan commission may approve a development plan.'" *Id.* at 850 (quoting I.C. § 36-7-4-1402(b)(1) (emphasis added)). "The Zoning Enabling Act itself provides a non-exclusive enumeration of the type of development requirements that "must be specified under section 1402(b)(1)." *Id.* (citing I.C. § 36-7-4-1403(a)).

[29]  The Zoning Enabling Act also mandates, "If a zoning district is designated . . ., the plan commission must approve or disapprove a development plan under this series for real property within the zoning district." I.C. § 36-7-4-1401.5(b).

The General Assembly has determined, "The plan commission has exclusive authority to approve or disapprove a development plan for real property located within the plan commission's jurisdiction." I.C. § 36-7-4-1401(b).

[30] In this context and based upon the undisputed facts, the trial court concluded:

> 40. Petitioners claim that they are aggrieved under I.C. § 36-7-4-1603 and prejudiced under I.C. § 36-7-4-1614(d) by the Plan Commission's decision . . . . Petitioners' claims . . . are based on the proximity of the turbines to their respective residences; on an alleged, prospective decrease in property values; on shadow flicker and noise from the wind turbines; and on an alleged loss of use and enjoyment of their real estate.
>
> 41. There is substantial evidence in the record that demonstrates that Apex's WECS Development Plan meets or exceeds Section 15-05's development requirements concerning (a) setbacks and proximity requirements of the wind turbines to existing dwellings; (b) shadow flicker; and (c) noise requirements.
>
> 42. A WECS is a permitted use in an agricultural zoning district and property values and loss of use and enjoyment are not discretionary factors considered by the Plan Commission under the Zoning Ordinance when making its ministerial decision to approve a WECS Development Plan.
>
> 43. Petitioners are not aggrieved under I.C. § 36-7-4-1603 by the Plan Commission's ministerial decision to approve Apex's WECS Development Plan.
>
> 44. Petitioners have failed to allege specific facts, as required by I.C. § 36-7-4-1607(b)(6), in their Amended Petition demonstrating that they are prejudiced by Plan Commission's ministerial decision to approve Apex's WECS Development Plan.

*Appellants' App*. at 19-20.

## Standing

On appeal, Landowners primarily focus on the issue of standing, contending that summary judgment in favor of Respondents was inappropriate because the trial court erred in determining that they lacked standing. We note, however, that the trial court's grant of summary judgment in favor of Respondents also rested upon a finding that Landowners have not demonstrated that they were prejudiced by the Zoning Decision. Error, if any, in finding that petitioner lacked standing to petition for review of the Zoning Decision is harmless where, like here, the trial court, in effect, afforded standing by addressing on the merits the very issues that petitioners were said to lack standing to raise. *Boffo v. Boone Cnty. Bd. of Zoning Appeals*, 421 N.E.2d 1119, 1132 (Ind. Ct. App. 1981). Furthermore, even if we were to conclude that the trial court erred in finding that Landowners lacked standing, our remedy would be to remand this case to the trial court for further findings regarding whether Landowners were prejudiced by the Zoning Decision. The trial court, however, has already made this determination. Given that the trial court's decision effectively afforded standing to Landowners, and in the interest of judicial efficiency, we will not address the merits of Landowners' claim on the trial court's determination regarding standing. Accordingly, we proceed, assuming, without deciding, that the trial court erred in finding no standing.

## Landowners were not Prejudiced by the Zoning Decision

Relief is available to Landowners only if they can prove that they were prejudiced by the Plan Commission's approval of the Zoning Decision. I.C. §

36-7-4-1614(d). Pursuant to powers bestowed upon local legislative bodies by the Zoning Enabling Act, the Wells County legislative body established the Zoning Ordinance. I.C. § 36-7-4-1401.5, -1403. In Article 9 of the Zoning Ordinance, the legislative body created zoning districts and set forth the specific permitted uses within those districts. WECS projects were specifically included as a permitted use on land in Wells County zoned as A-1. *Appellants' App.* at 463. Landowners live on land zoned as A-1. Through Article 14 of the Zoning Ordinance, the Wells County legislative body established the general requirements to obtain approval from the Plan Commission for a WECS development plan. Thereafter, in 2009, the legislative body added the WECS ordinance as Article 15. *Appellants' App.* at 425.

[33] Landowners maintain that they were prejudiced by the Zoning Ordinance because wind turbines will be in close proximity to their homes and they will suffer additional noise and shadow flicker. In Article 15, the Wells County legislative body established specific requirements that must be met in order for a WECS Development Plan to be approved by the Plan Commission. Included in that list were requirements regarding turbines having a 1000-foot setback from a dwelling; the color and finish for each turbine; safety design and installation standards, including, braking systems, climb prevention measures, blade clearance, compliance with Federal Aviation Administration rules for height and lighting, and proof of approvals of other local, state, and federal agencies; hazard signage; and electrical components. *Appellants' App.* at 486-87. Section 15-05(4), in part, provided that each WECS project: shall not make

noise exceeding fifty decibels on the "DBA scale as measured at the nearest existing residential dwelling"; and "shall be designed to minimize shadow flicker on an existing residential dwelling." *Id*. at 487.

[34] Landowners also contend that the Plan Commission failed to consider the proximity of turbines on the value of their properties. The stated purpose of Article 15 is to "facilitate the development and growth of WECS Projects and Communications Towers while preserving public health, welfare, and safety for all real estate owners and occupants." *Id*. at 481. While Article 2 of the Zoning Ordinance sets forth the legislative body's general purpose to, in part, "conserve the value of land and of the buildings and improvements upon the land," *Id*. at 438 (citing Section 2-01(2) of the Zoning Ordinance), that goal is conspicuously absent from the above-stated purpose of Article 15—the Article that specifically applies to WECS projects.

[35] The General Assembly has decided that "the plan commission has exclusive authority to approve or disapprove a development plan for real property located within the plan commission's jurisdiction." I.C. § 36-7-4-1401.5(b). The manner in which the Plan Commission undergoes this approval is to review the development plan to see if it is consistent with the comprehensive plan and satisfies the development requirements specified in the zoning ordinance. I.C. 36-7-4-1405(a). The legislative body of Wells County consciously elected to allow WECS projects in land zoned as A-1, as long as those projects complied

with specific requirements set forth in the Zoning Ordinance.[10]  The legislative body did not include preservation of land value as one of the purposes of Article 15.  It did, however, determine that a turbine must have a setback from a property line of 1.1 times the length of the highest point of the blade, must have a setback from a residential dwelling of 1000 feet, must have a noise level outside a nonparticipating dwelling of no greater than 50 decibels, and must produce a minimal amount of shadow flicker—here that amount was determined to be thirty hours per year.  *Appellants' App*. at 483, 487.

[36]  The circumstances about which Landowners contend they have been prejudiced, their proximity to the wind turbines and its resultant noise and shadow flicker plus a decrease in the value of their land, were circumstances created not by the Plan Commission's approval of Apex's Development Plan, but instead, by the legislative body's enactment of Article 15.  By reaching this conclusion, we are not diminishing the concerns of Landowners regarding the placement of wind turbines in their community.  Instead, we are recognizing the power our legislature has given to the Wells County legislative body to

---

[10] Landowners contend that the Plan Commission failed to consider whether the Development Plan complied with Sections 14-05(1), (2), and (3), i.e., that the Development Plan was compatible with surrounding land use, was sited, oriented, and landscaped to be harmonious with adjacent land and buildings, and was consistent with the environment of the neighborhood.  Assuming without deciding that it was error for the Plan Commission to not specifically address these provisions, that error was harmless.  Our court has noted, "The inclusion of the particular use in the ordinance as one which is permitted under certain conditions, is equivalent to a legislative finding that the prescribed use is one which is in harmony with the other uses permitted in the district."  *Boffo v. Boone Cnty. Bd. of Zoning Appeals*, 421 N.E.2d 1119, 1124 (Ind. Ct. App. 1981) (quoting 3 A. H. Rathkopf, The Law of Zoning and Planning, § 41.10 (1980)).  Following the same reasoning, we believe that a legislative body's inclusion of a permitted use under certain circumstances also suggests that the use is compatible with the surrounding environment and consistent with the environment of the neighborhood.

determine the uses that will be permitted in various zones of the county. The trial court did not err in granting summary judgment as to Count I upon a finding that Landowners were not prejudiced by the Zoning Decision.

[37] Here, the Wells Superior Court granted summary judgment only as to Count I; however, the court also granted Landowners' petition for declaratory judgment as to Count II and ordered that "the Reciprocal Setback provision in Article 15 of the Zoning Ordinance is declared invalid and should be stricken from the Zoning Ordinance." *Appellants' App*. at 22. Additionally, the trial court ordered "that the Development Plan submitted by Wells County Wind II is hereby remanded to the Plan Commission with instructions that the Plan Commission review the Development Plan and its record of proceedings leading up to its decision on August 14, 2013, to determine if the Development Plan satisfies or fails to satisfy the requirements of Article 15 of the Zoning Ordinance and any additional requirements incorporated into these Articles by reference." *Id*. at 23. The parties do not appeal the trial court's conclusions on these two issues.[11] Therefore, while we affirm the trial court's grant of partial summary judgment upon a finding that Landowners were not aggrieved or prejudiced by the Plan

---

[11] In their brief, Respondents note that, although they believe that the trial court was incorrect in finding that the reciprocal setback violated the constitution, that finding is ultimately irrelevant for the purposes of Apex's WECS Development Plan and whether the Remonstrators had standing under the 1600 Series. *Appellees' Br*. at 3 n.2. Respondents offer that, to the extent this court wishes to review the trial court's constitutional ruling on the reciprocal setback *sua sponte*, they rely on their arguments to the trial court on that issue. *Id*. (citing *Appellants' App*. at 1288-94. *See Morse v. State*, 593 N.E.2d 194, 197 (Ind. 1992) (constitutionality of a statute may be reviewed *sua sponte* by appellate court). Because Landowners feel harmed by the reciprocal setback and Remonstrators have failed to make a specific argument on appeal, we do not address this issue.

Commission's approval of Apex's Development Plan, consistent with the trial court's decision, we also remand this action to the trial court with instructions to remand the Apex Development Plan to the Plan Commission. The Plan Commission, in turn, must follow the instructions set forth in the trial court decision to strike the Reciprocal Setback provision in Article 15 of the Zoning Ordinance, and review Apex's Development Plan and the Plan Commission's record of proceedings leading up to its decision on August 14, 2013, to determine if the Development Plan "satisfies or fails to satisfy the requirements of Article 15 of the Zoning Ordinance and any additional requirements incorporated into these Articles by reference." *Appellants' App.* at 23.

[38] Affirmed and remanded with instructions.

Friedlander, J., and Crone, J., concur.