## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 04 2018, 9:08 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Terry K. Hiestand
Hiestand Law Office, LLC
Chesterton, Indiana

ATTORNEY FOR APPELLEE

Adam J. Sedia
Hoeppner, Wagner & Evans, LLP
Merrillville, Indiana

### IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Central States Tower III, LLC, a/k/a Central States Tower,<br><br>*Appellant-Petitioner,*<br><br>v.<br><br>Plan Commission of the City of Portage,<br><br>*Appellee-Respondent* | April 4, 2018<br><br>Court of Appeals Case No. 64A04-1710-CC-2400<br><br>Appeal from the Porter Superior Court<br><br>The Honorable William E. Alexa, Judge<br><br>Trial Court Cause No. 64D02-1705-CC-4934 |

**Baker, Judge.**

[1]     Central States Tower III, LLC (CST), appeals the trial court's order denying relief on CST's petition for judicial review. CST sought review of the Plan Commission of the City of Portage's (the Plan Commission) denial of CST's site plan proposal for construction of a telecommunications tower. Finding no error, we affirm.

# Facts

[2]     Portage Township Multi-School Building Corporation (the School Building Corporation) owns approximately thirty-five acres of land (the Property) in Portage on which Willowcreek Middle School is located. On November 13, 2015, the School Building Corporation and CST executed a lease agreement (the Lease), pursuant to which CST would rent a 7,961-square-foot parcel (the Site) on the Property. CST planned to construct and operate a telecommunications tower on the Site.

[3]     The Lease granted CST unrestricted access to the Site in accordance with Exhibit 2 to the Lease. Exhibit 2 conveyed an access and utility easement (the Easement) stretching eastward from the Site and connecting to Evergreen Avenue, which in turn connected with Willowcreek Road. The Lease also contained the following provision regarding access:

> 12.   ACCESS. At all times through the Term of this Agreement, and at no additional charge to [CST], [CST] and its employees, agents, and subcontractors, will have twenty-four (24) hour per day, seven (7) day per week pedestrian and vehicular access to and over the Property, from an open and improved public road to the [Site], for

the installation, maintenance and operation of the [telecommunications tower] and any utilities serving the [Site]. [The School Building Corporation] grants to [CST] an easement for such access and [the School Building Corporation] agrees to provide to [CST] such codes, keys, and other instruments necessary for such access at no additional cost to [CST]. Upon [CST]'s request, [the School Building Corporation] will execute a separate recordable easement evidencing this right. In the event any public utility is unable to use the access or easement provided to [CST] then [the School Building Corporation] agrees to grant additional access or an easement either to [CST] or the public utility, for the benefit of [CST], at no cost to [CST].

Appellant's App. Vol. II p. 41.

[4] CST filed a petition for a special zoning exception for the Site with the Portage Board of Zoning Appeals (the Board). Portage's Development Review Planner (the Planner) submitted a report to the Board on CST's petition. The Planner noted that "the location of the service entrance" as accessed through Willowcreek Road and Evergreen Avenue, was "not ideal." *Id.* at 60. On April 25, 2016, the Board voted to approve the special exception on three conditions: (1) CST must adopt the Planner's proposed landscaping plan; (2) CST must erect an eight-foot fence around the Site; and (3) the fence must be of better quality than a chain link fence.

[5] Under Portage's zoning ordinance, anyone seeking to erect a telecommunications tower must first obtain an improvement location permit, which requires a site plan review. Only after an improvement location permit is

obtained may the party apply for a building permit. CST submitted its site plan proposal to the Plan Commission on June 23, 2016. Before being considered by the entire Plan Commission, however, the site plan was reviewed by the Plan Commission's Development Review Committee (DRC).

[6] When the DRC reviewed CST's site plan proposal, the DRC noted that Portage's future development plans included elimination of the portion of Evergreen Avenue where the Easement connected. Specifically, the city planned to end Evergreen Avenue in a cul-de-sac before it reached the point where the Easement connected, replacing the road in that area with a sidewalk. The plan's purpose was to change traffic flow between the middle and nearby elementary schools and to consolidate the schools into a single campus. Because of this plan, which had been approved in May 2016, CST would need a new easement from the School Building Corporation to be able to access the Site.

[7] Notwithstanding the uncertainty regarding CST's ability to access the Site, the DRC approved CST's site plan on three conditions: (1) CST would need to acquire a new access easement to the Site; (2) the Board's landscaping and fencing conditions would have to appear in the site plan; and (3) the revised site plan would have to be re-submitted for final approval.

[8] On October 28, 2016, CST submitted a new site plan. The new site plan showed the original Easement (with access supplied via Evergreen Avenue) as a temporary access for construction, with access to be discontinued as soon as

construction was complete. After that time, the plan showed a new access point going south and west of the Site to a north-south access road (the Alternative Easement).

[9] On November 15, 2016, the DRC convened a special meeting to consider CST's new site plan. The DRC questioned CST as to whether the School Building Corporation had approved the Alternative Easement; CST stated that an "agreement for site access would be worked out at a later time." *Id.* at 84. Because of the lack of an agreement for the Alternative Easement, the DRC recommended that the Plan Commission deny CST's site plan.

[10] On December 5, 2016, the Plan Commission held a final hearing on CST's site plan. CST introduced multiple documents into evidence, including two emails from people affiliated with the School Building Corporation. First, the superintendent of the Portage Township Schools stated as follows:

> I'd like to reiterate that it is not my intention to bring [CST's request for the new easement] to the [school] board at this time. . . . We have a school to run and that is our first priority at this important time. It is not in the best interest of the school corporation to lock ourselves into a new agreement at this time.
>
> . . . We know there will be a great deal of work and effort in the area in question around Willowcreek Middle School. Until we have greater clarity on what changes will be made for the future and what we as a school corporation need to do, we will withhold any new agreements.

*Id.* at 92. Second, the president of the school board stated as follows:

. . . [M]y recommendation to the [school] board is to follow the suggestion from our Superintendent on this issue. . . . As I previously stated, maybe at a later date once we have clarity on both what the city wants to do and consequently what we (school) wants [sic] to do we could look at it again. . . .

*Id.* at 93. After CST presented its case, an employee of Portage's Department of Community Development noted that the construction on Evergreen Avenue would begin within the coming year and that traffic from Evergreen Avenue would then have to be redirected down side streets. A number of proposals existed to modify those streets to accommodate the additional traffic, but none had been adopted or approved yet. In other words, there was a great deal of uncertainty about general traffic patterns and traffic flow in that area.

[11] CST argued that under the Lease, the School Building Corporation was obligated to grant CST access to the Site. But a member of the Plan Commission did not find that argument persuasive:

> . . . The real point is, that [proposed new easement] is not a recorded access easement. So as we sit here, there is no access to this site. In my opinion, the Plan Commission is being put in a position between somebody who wants to build a tower and their landlord, the school system. . . . I think the Plan Commission—I think we should stay out of that fight. This is not our fight, and I think we—I don't think that there's any way we can approve this plan as it exists.

*Id.* at 157. At the conclusion of the hearing, the Plan Commission unanimously denied CST's site plan. On April 21, 2017, the Plan Commission issued written findings; among other things, the Plan Commission found as follows:

7. While the . . . [Lease] apparently requires [the School Building Corporation] to give [CST] access to the cell tower site, [the School Building Corporation] has not given its approval to the [Alternative Easement] reflected on the site plan, and [CST] has been unsuccessful in negotiating a new access agreement . . . .

8. When the [original Easement] is no longer available, there may be an issue . . . as to the location of a permanent access easement to the [Site].

9. There is not currently a document available in recordable form verifying the [Alternative Easement] reflected on the site plan.

10. Without an Easement Agreement in recordable form verifying the [Alternative Easement] reflected on the site plan, [CST] is not in compliance with City Ordinance as to site plan review and approval for wireless telecommunication facilities.

*Id.* at 101-02.

[12] On May 19, 2017, CST filed a petition seeking judicial review of the Plan Commission's denial of its site plan proposal. Following submission of written materials and argument, the trial court denied CST's request to overturn the Plan Commission's decision on October 3, 2017. Ultimately, the trial court found that "[t]he Plan Commission was justified in denying site plan approval because the [School Building Corporation] had neither given its approval to [CST] for the [A]lternative [E]asement, nor was there an Access Easement in

recordable form as to the new permanent access proposed." *Id.* at 11. CST now appeals.

## Discussion and Decision

[13] CST argues that the trial court should have overturned the Plan Commission's decision. Final decisions of plan commissions are reviewed in the same manner as appeals from decisions by boards of zoning appeals. *Plan Comm'n v. Aulbach*, 748 N.E.2d 926, 933 (Ind. Ct. App. 2001). When reviewing such decisions, we are bound by the same standard of review as the trial court. *Hoosier Outdoor Advert. Corp. v. RBL Mgmt.*, 844 N.E.2d 157, 162 (Ind. Ct. App. 2006). As such, we must accept the facts as found by the zoning board/plan commission, and may not substitute our own judgment for that of the agency. *Id.* at 163. Furthermore, we may neither reweigh the evidence nor reassess witness credibility. *Id.*

[14] In conducting judicial review of a zoning decision,[1] a trial court may grant relief only if:

> the court determines that the petitioner has been prejudiced by a zoning decision that is: (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) contrary to constitutional right, power, privilege, or immunity; (3) in excess of statutory jurisdiction, authority, or limitations, or short

---

[1] It is undisputed that CST is entitled to judicial review. *See Dunmoyer v. Wells Cty.*, 32 N.E.3d 785, 792 (Ind. Ct. App. 2015) (petitioner entitled to judicial review if it has standing, has exhausted administrative remedies, has filed a timely petition for review, and has timely filed the board record for review).

of statutory right; (4) without observance of procedure required by law; or (5) unsupported by substantial evidence.

*Dunmoyer*, 32 N.E.3d at 792-93. An agency's decision is arbitrary and capricious when it is "'patently unreasonable' and is 'made without consideration of the facts and in total disregard of the circumstances and lacks any basis which might lead a reasonable person to the same conclusion.'" *A.B. v. State*, 949 N.E.2d 1204, 1217 (Ind. 2011) (quoting *City of Indianapolis v. Woods*, 703 N.E.2d 1087, 1091 (Ind. Ct. App. 1998)).

[15] CST's argument can be summarized as follows: because the School Building Corporation was contractually obligated (via the Lease) to provide CST with an easement to access the Site, the fact that there is currently no such permanent easement in place should not form the basis of the denial of CST's site plan proposal. CST has temporary access, via the original Easement, until the city begins construction on Evergreen Avenue; when that access is removed, the School Building Corporation will simply have to provide an alternative way for CST to access the Site.[2]

---

[2] CST also contends that the city would not have the right to begin construction on Evergreen Avenue if CST did not have alternative access to the Site. *See* Ind. Code § 36-7-3-13(2) (providing that a person aggrieved by a proposed vacation of a public way may object if the vacation would make access to the lands of the aggrieved person by means of public way difficult or inconvenient). The Plan Commission notes that this statute "grants the right to remonstrate to a lot owner's petition to vacate a public way on or contiguous to the owner's lot, not to a municipality's decision to vacate its own public roads." Appellee's Br. p. 22. In any event, the final decision to make the changes to Evergreen Road had already been made over six months before the Plan Commission's hearing on CST's site plan. Therefore, we do not find this argument persuasive.

[16] Portage has an ordinance requiring an application for site plan approval for a telecommunications facility to include "copies of any necessary easements." Portage Mun. Code § 90-6.50(J)(11); Appellant's App. Vol. II p. 107. CST's application did not include such copies—because an agreement as to the Alternative Easement had not been reached. Indeed, CST's representative admitted that no such agreement existed and both the superintendent and the president of the school board stated quite clearly and firmly that no such agreement was likely to materialize in the near future.

[17] What CST is asking the Plan Commission to do is to step into a potential breach of contract dispute between CST and the School Building Corporation. In fact, as noted by the Plan Commission, for it to have considered CST's rights and the School Building Corporation's obligations under the Lease would have required it to construe the language of a legal document "and adjudicate not even an actual, but a potential dispute over the document's meaning." Appellee's Br. p. 25. The Plan Commission has no obligation or authority to do so. The site plan as presented to the Plan Commission did not have the required easements attached—because they did not exist. Under these circumstances, we find that the trial court did not err by finding that the Plan Commission's denial of CST's site plan proposal was not arbitrary, capricious, contrary to law, or unsupported by substantial evidence.

[18] The judgment of the trial court is affirmed.

Kirsch, J., and Bradford, J., concur.