

**FILED**

Jun 05 2020, 7:41 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Terry K. Hiestand
Hiestand Law Office, LLC
Chesterton, Indiana

ATTORNEYS FOR APPELLEE

Adam J. Mindel
Mindel & Associates
Hobart, Indiana

Dan L. Whitten
Whitten & Whitten
Portage, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Central States Tower IV, LLC, *Appellant-Petitioner,* | June 5, 2020 |
| | Court of Appeals Case No. 19A-PL-3046 |
| v. | Appeal from the Porter Superior Court |
| Board of Zoning Appeals of the City of Portage, *Appellee-Respondent.* | The Honorable Jeffrey W. Clymer, Judge |
| | Trial Court Cause No. 64D02-1903-PL-3013 |

**Sharpnack, Senior Judge.**

## Statement of the Case

[1]     Appellant-Petitioner Central States Tower IV, LLC ("CST") appeals the trial court's order denying its petition for writ of certiorari. CST challenges whether

the trial court erred in affirming Appellee-Respondent Board of Zoning Appeals of the City of Portage's ("BZA" or "Board") denial of CST's application for a special exception for the location of a cell tower. We reverse the trial court's decision and remand with instructions to dismiss CST's petition for writ of certiorari.

## Issue

CST raises several issues for our review. However, we find that resolution of the following issue leads to reversal of the trial court's judgment, that is, whether CST's failure to file the BZA record with the trial court, or request an extension of time to do so within the timeframe provided by applicable Indiana statutes, requires dismissal of CST's petition for writ of certiorari.[1]

## Facts and Procedural History

This court has previously stated the relevant facts in this matter in a prior appeal involving Central States Tower III, LLC (a predecessor of Central States Tower IV, LLC) and the Plan Commission of the City of Portage. The relevant facts are as follows:

> Portage Township Multi-School Building Corporation (the School Building Corporation) owns approximately thirty-five acres of land (the Property) in Portage on which Willowcreek Middle School is located. On November 13, 2015, the School Building Corporation and CST executed a lease agreement (the

---

[1] Finding this issue dispositive, we need not address the four issues that CST raised.

Lease), pursuant to which CST would rent a 7,961-square-foot parcel (the Site) on the Property.[2] CST planned to construct and operate a telecommunications tower on the Site.

The Lease granted CST unrestricted access to the Site in accordance with Exhibit 2 to the Lease[, which] . . . conveyed an access and utility easement (the Easement) . . . . The Lease also contained [a] provision regarding access [over the Property and to the Site.]

CST filed a petition for a special zoning exception for the Site with the Portage Board of Zoning Appeals (the Board). . . . On April 25, 2016, the Board voted to approve the special exception on [certain conditions, including erecting a fence around the Site.]

* * *

Under Portage's zoning ordinance, anyone seeking to erect a telecommunications tower must first obtain an improvement location permit, which requires a site plan review. Only after an improvement location permit is obtained may the party apply for a building permit. CST submitted its site plan proposal to the [Plan Commission of the City of Portage (the Plan Commission)] on June 23, 2016. Before being considered by the entire Plan Commission, however, the site plan was reviewed by the Plan Commission's Development Review Committee (DRC).

When the DRC reviewed CST's site plan proposal, [it determined that, based upon a proposed change in the traffic flow] between the middle and nearby elementary schools and to consolidate the schools into a single campus . . . , CST would need a new easement from the School Building Corporation to be able to access the Site.

---

[2] Central States Tower III, LLC, a predecessor of Appellant-Petitioner Central States Tower IV, LLC, was the entity that entered into the November 2015 Lease with the School Building Corporation. In this appeal, we refer to both Central States Tower entities collectively as "CST."

Notwithstanding the uncertainty regarding CST's ability to access the Site, the DRC approved CST's site plan on three conditions: (1) CST would need to acquire a new access easement to the Site; (2) the Board's landscaping and fencing conditions would have to appear in the site plan; and (3) the revised site plan would have to be re-submitted for final approval.

On October 28, 2016, CST submitted a new site plan. . . . [T]he plan showed[, among other things,] a new access point going south and west of the Site to a north-south access road (the Alternative Easement).

On November 15, 2016, the DRC convened a special meeting to consider CST's new site plan. The DRC questioned CST as to whether the School Building Corporation had approved the Alternative Easement; CST stated that an "agreement for site access would be worked out at a later time." [Appellant's App. Vo. II p. 84]. Because of the lack of an agreement for the Alternative Easement, the DRC recommended that the Plan Commission deny CST's site plan.

On December 5, 2016, the Plan Commission held a final hearing on CST's site plan. CST introduced multiple documents into evidence, including two emails from people affiliated with the School Building Corporation[, indicating that the School Building Corporation was reluctant to enter into a new agreement with CST regarding an easement to the Site]. . . .

* * *

CST argued that under the Lease, the School Building Corporation was obligated to grant CST access to the Site. But a member of the Plan Commission did not find that argument persuasive:

> . . . The real point is, that [the proposed new easement] is not a recorded access easement. So as we sit here, there is no access to this site. In my opinion, the Plan Commission is being put in a position between somebody who wants to build a tower and their landlord, the school system. . . . I think the Plan Commission—I think we

> should stay out of that fight. This is not our fight, and I think we—I don't think that there's any way we can approve this plan as it exists.
>
> *Id.* at 157. At the conclusion of the hearing, the Plan Commission unanimously denied CST's site plan. . . .
>
> On May 19, 2017, CST filed a petition seeking judicial review of the Plan Commission's denial of its site plan proposal. Following submission of written materials and argument, the trial court denied CST's request to overturn the Plan Commission's decision on October 3, 2017. Ultimately, the trial court found that "[t]he Plan Commission was justified in denying site plan approval because the [School Building Corporation] had neither given its approval to [CST] for the [A]lternative [E]asement, nor was there an Access Easement in recordable form as to the new permanent access proposed." *Id.* at 11.

*Central States Tower III, LLC v. Plan Comm'n of City of Portage*, 99 N.E.3d 665, 666-69 (Ind. Ct. App. 2018), *trans denied*. CST appealed and, on April 4, 2018, a panel of this court issued an opinion affirming the judgment of the trial court. *Id.* at 670.

[4] On April 20, 2018, CST forwarded to the School Building Corporation a proposal for a new easement, which was the Alternative Easement that had been submitted to the Plan Commission in December 2016. When the School Building Corporation failed to execute the Alternative Easement, CST filed suit on September 11, 2018, in the Porter Superior Court. CST sought specific performance of the School Building Corporation's obligations to provide access to the Site according to the Lease and to also provide a recordable easement.

[5] On December 28, 2018, CST filed a summary judgment motion. A little over a week later, on January 7, 2019, the School Building Corporation provided CST with the Alternative Easement, which was recorded in the Porter County Recorder's Office on January 11, 2019.

[6] On January 17, 2019, a representative of CST delivered a copy of the recorded Alternative Easement to the office of Kurt S. Knutsen, Development Review Planner for the City of Portage, and requested a building permit. On January 29, 2019, Knutsen denied the request, memorialized as follows:

> The new easement appears to be the same access that was presented previously to the DRC and Plan Commission, but which had not at that time been approved by [the School Building Corporation]. I told you that it was my opinion that Central States Tower would have to submit a new application for a special exception because by the terms of City ordinance . . . , a special exception for a specific use ceases to be authorized and is void if that use is not fifty percent (50%) established within a twelve (12) month period of the date the special exception was granted. The [S]pecial [E]xception was granted April 25, 2016, and well more than twelve (12) months have passed since without the use be[ing] at all established. . . .
>
> I have checked to see if there might be any other options, but see none. The ordinance is quite clear. [CST] will need to again apply to the BZA for a special exception.

Appellant's App. Vol. 2, p. 72.

[7] On February 5, 2019, CST appealed Knutsen's decision to the BZA, challenging the denial of the building permit. At its meeting held on February

25, 2019, the BZA denied CST's request to overturn Knutsen's decision and advised CST that it would need to file a new application for a special exception for the Site.

[8]     CST filed a new application for a special exception on March 6, 2019 "(Second Special Exception"), seeking approval to construct a 175-foot cell tower on the Site. The matter was taken up at a public hearing held during the BZA's meeting that took place on March 25, 2019. At the conclusion of the hearing, a motion was made and seconded to approve CST's Second Special Exception. However, the motion failed by a vote of three to two. Representatives of CST pointed out to the BZA that the failure of the motion to approve the application for the Second Special Exception did not amount to a vote to deny the Second Special Exception, as such a vote would require findings pursuant to Indiana Code section 36-7-4-919(f) (1983).[3] The BZA took no further action at that time, and the meeting was adjourned. The following day, on March 26, 2019, CST filed in the Porter Superior Court a verified petition for writ of certiorari, contesting the BZA's decision.[4]

---

[3] Indiana Code section 36-7-4-919(f) reads: "Within five (5) days after making any decision under the 900 series, the board of zoning appeals shall file in the office of the board a copy of its decision."

[4] CST filed a petition for writ of certiorari but should have sought judicial review instead, as the certiorari process has been repealed, and Indiana Code sections 36-7-4-1600 through 36-7-4-1616 (2011) (the "1600 Series") "establish[ ] the exclusive means for judicial review of zoning decisions as described in section 1003 or 1016 of this chapter, made by a board of zoning appeals . . . ." Ind. Code § 36-7-4-1601(a) (2011); *see also Carmel Bd. of Zoning Appeals v. Bidgood*, 120 N.E.3d 1045, 1050 (Ind. Ct. App. 2019).

[9] At the BZA meeting held on April 22, 2019, the BZA determined that it needed additional time to review new materials that CST had submitted, including a proposal to lower the height of the proposed tower from 175 feet to 150 feet. At its next meeting, held on May 28, 2019, the BZA voted 4-1 to deny the application for the Second Special Exception. Chairperson Denise Little recognized that written findings of fact were required, and the proposed findings were subsequently prepared by the BZA's counsel and provided to the Board members.

[10] At the following BZA meeting, held on June 24, 2019, the findings of fact were not adopted. Instead, Chairperson Little stated that she would review the proposed findings and then confer with the BZA's counsel. At the July 22, 2019 BZA meeting, the BZA finally adopted the findings of fact in support of its decision, made at its May 28, 2019 meeting, to deny approval of CST's application for the Second Special Exception.

[11] On July 2, 2019, CST filed with the trial court an amended verified petition for writ of certiorari. That same day, the trial court issued an order directing the parties to submit proposed findings of fact, and the parties timely submitted their findings of fact and conclusions thereon. However, CST did not file the BZA record with the trial court within thirty days of filing its petition or request an extension of the filing deadline, as required by Indiana Code sections 36-7-4-1613(a) and (b) (2011). The BZA did not file a motion to dismiss the petition, under Indiana Code section 36-7-4-1613(b), on grounds that CST had failed to timely file the BZA record or timely request an extension to do so, and the trial

court did not dismiss the petition on its own motion. Instead, on November 26, 2019, the trial court entered its Order and Findings of Fact and Conclusions of Law, upholding the BZA's decision to deny CST's application for the Second Special Exception. This appeal ensued.

# Discussion and Decision

## Motion to Strike

[12] Initially, we must address the BZA's motion to strike that it has filed with this Court. CST included in its appendix a copy of the BZA record. The BZA argues that the record should be stricken from CST's appendix because the record was never filed with the trial court. According to the BZA, the unfiled record constitutes new evidence that may not be introduced on appeal. By separate order issued contemporaneously with this opinion, and for reasons more clearly set forth below, we grant the BZA's motion to strike. We now address the dispositive issue before us after first setting forth the standard of review.

## Standard of Review

[13] When reviewing a decision of a zoning board, the trial court must determine if the board's decision was incorrect as a matter of law. *Bd. of Zoning Appeals v. Elkins*, 659 N.E.2d 681, 683 (Ind. Ct. App. 1996), *trans. denied*. Also, the trial court may not conduct a trial de novo or substitute its decision for that of the board. *Id.* "The Court of Appeals' review of a trial court's ruling on review of such a decision is governed by the same considerations. Unless the Board's

decision was illegal, it must be upheld." *Bd. of Zoning Appeals of Evansville and Vanderburgh Cty. v. Kempf*, 656 N.E.2d 1201, 1203 (Ind. Ct. App. 1995), *trans. denied* (internal citations omitted). However, findings of fact are required to ensure adequate judicial review of administrative decisions. *Brownsburg Conservation Club, Inc. v. Hendricks Cty. Bd. of Zoning Appeals*, 697 N.E.2d 975, 978 (Ind. Ct. App. 1998).

## Failure to Timely File the BZA Record

[14] The dispositive issue is whether CST's failure to, within thirty days of filing its amended petition for writ of certiorari, either file the BZA's record or file a motion for extension of time in which to file the record requires dismissal of its petition.

[15] CST concedes that it did not file the BZA record within thirty days of the filing of its petition. Its argument, however, is that it did not do so because the BZA failed to compile the record and provide it to CST for filing, as required by Indiana Code section 36-7-4-1613(c). The section reads in relevant part: "Upon a written request by the petitioner, the board making the zoning decision being reviewed shall prepare the board record for the petitioner." CST also intimates that the burden was on the BZA to file the record with the trial court. Regarding its decision to include the unfiled record in its appendix, CST explains that, "[a]s [it] was preparing [its appendix for this appeal], [it] discovered that [the BZA] had not filed the [record] with the Trial Court and that the counsel for the BZA[, that was] responsible for that apparent

oversight[,] no longer represents the BZA." Appellant's Br. p. 7. CST "constructed the BZA [r]ecord and submitted it as Volume 3 of [CST's a]ppendix so that the documents cited in the pleadings and the decision of the Trial Court c[ould] be referenced." *Id.*

[16] Indiana Code sections 36-7-4-1600 through 36-7-4-1616 (the "1600 Series") "establish[ ] the exclusive means for judicial review of zoning decisions . . . ." Ind. Code § 36-7-4-1601(a). At issue in this case is section 1613, which provides that the board shall prepare the board record for the petitioner upon the petitioner's written request. Ind. Code § 36-7-4-1613(c). The section further provides: "Within thirty (30) days after the filing of the petition, or within further time allowed by the court, *the petitioner shall transmit* to the court the original or a certified copy of the board record for judicial review of the zoning decision . . . ." Ind. Code § 36-7-4-1613(a) (emphasis added). If the record cannot be filed within the thirty-day timeframe, section 1613 provides for an extension of time, specifically: "An extension of time in which to file the record shall be granted by the court for good cause shown[,]" and the "[i]nability to obtain the record from the responsible board within the time permitted by this section is good cause." Ind. Code § 36-7-4-1613(b). Finally, a petitioner's "*[f]ailure to file the record within the time permitted by this subsection*, including any extension period ordered by the court, *is cause for dismissal* of the petition for review by the court, on its own motion, or on petition of any party of record to the proceeding." *Id.*

[17]     In our Supreme Court's evenly divided decision in *Indiana Family & Social Services Administration v. Meyer*, 927 N.E.2d 367, 368 (Ind. 2010), a case involving a Medicaid claimant's appeal of the Family and Social Services Administration's (FSSA) decision to deny her benefits, the Court examined whether the trial court had the authority to grant an extension of time to file the record in a petition for review of a FSSA's decision, under the Indiana Administrative Orders and Procedures Act ("AOPA"), where the record was not filed within the required statutory period (thirty days) or any authorized extension of this period.[5] All four justices agreed as follows regarding the relevant provisions of the AOPA:

> We believe the statute is clear. The statute places on the petitioner the responsibility to file the agency record timely. Although the statute allows a petitioner to seek extensions of time from the trial court, and requires that extensions be granted if the petitioner demonstrates "good cause" for a delay in filing the record, the statute does not excuse untimely filing or allow *nunc pro tunc* extensions. . . . It is well settled that a reviewing court may grant a request for an extension under [the] AOPA only if the request is made during the initial thirty days following the filing of the petition for review or within any previously granted extension.

---

[5] The provisions of the AOPA that govern judicial review of agency decisions and the filing of an agency record are materially identical to like provisions of the 1600 Series. In *Howard v. Allen Cty. Bd. of Zoning Appeals*, 991 N.E.2d 128, 130 (Ind. Ct. App. 2013), this court noted that because the judicial review provisions of the 1600 Series are materially identical to those found in the AOPA, and "the legislature had the same intent in enacting both[,]" we could "interpret these respective provisions in the same manner and rely on AOPA case law" in interpreting the 1600 Series. *Id.*

*Meyer*, 927 N.E.2d at 370 (internal citations omitted).

[18] In *Howard v. Allen County Board of Zoning Appeals*, 991 N.E.2d 128, 129 (Ind. Ct. App. 2013), the question before this court was whether section 1613 required dismissal of Howard's petition for judicial review where Howard had not timely filed the board record and had failed to timely request an extension of the filing deadline. The trial court had granted the respondents' motion to dismiss Howard's petition. In affirming the trial court's judgment, we looked to *Meyer* and determined that section 1613 required dismissal of Howard's petition. *Id.* at 131. Also, we rejected Howard's suggestion that the trial court had discretion to accept the belatedly filed board record where the extension of time had not been granted. *Id.*

[19] In *Teaching Our Posterity Success, Inc. v. Indiana Department of Education*, 20 N.E.3d 149, 155 (Ind. 2014)—a case interpreting the AOPA—our Supreme Court established a "bright-line approach" regarding the "requirement that the official agency record must be filed with the trial court in order for judicial review to proceed." The Court held that "a petitioner for review *cannot receive consideration of its petition* where the statutorily-defined agency record has not been filed." *Id.* (emphasis added) (footnote omitted); *see also First Am. Title Ins. Co. v. Robertson*, 19 N.E.3d 757, 762-63 (Ind. 2014).

[20] Turning to the case before us, we first note that, regarding CST's assertion that the BZA failed to compile the record and provide it to CST for filing, caselaw and statute have established that reliance on the board to timely prepare its

record does not relieve the petitioner of the statutory requirement to timely seek an extension of time in which to file the record. *See Meyer*, 927 N.E.2d at 371 (Court noted AOPA statute governing filing of agency record "acknowledges possible difficulties" in preparing and submitting agency record but places burden on the petitioner to file or seek an extension within statutory period or any previously granted extension); *see also Carmel Bd. of Zoning Appeals v. Bidgood*, 120 N.E.3d 1045, 1046 (Ind. Ct. App. 2019) (where remonstrators assumed, rightly or wrongly, that it was "taking the Board's staff some time to put the Record . . . together[,]" remonstrators were not excused from their failure to timely comply with statutory requirements for filing the board record); and Ind. Code § 36-7-4-1613(b) ("An extension of time in which to file the record shall be granted by the court for good cause shown[,]" and the "[i]nability to obtain the record from the responsible board within the time permitted by this section is good cause.").

[21] Secondly, section 1613(a) is clear: CST, not the BZA, was required to file the BZA's record within thirty days of filing its amended petition for writ of certiorari. Ind. Code § 36-7-4-1613(a). CST failed to do so; it did not timely seek an extension of the deadline in which to file the record, as required by section 1613(b); and, the trial court did not have the discretion to accept an untimely filing of the BZA's record where an extension of time was not timely sought and granted. *See Howard*, 991 N.E.2d at 131.

[22] However, a distinguishing factor, procedurally, between the instant case and the *Meyer*, *Howard*, and *Teaching Our Posterity Success, Inc.* cases is that, here, no

motion to dismiss CST's petition was filed. Specifically, upon the expiration of the time period in which to file the record or seek an extension of time to do so, the BZA did not file a motion to dismiss CST's petition, and the trial court did not, on its own motion, dismiss the petition. Instead, the trial court issued its findings of fact and conclusions, even though it had no record before it on which to base its findings and conclusions. Nevertheless, even under these circumstances, we find that the "bright-line approach[,]" that our Supreme Court set forth in *Teaching Our Posterity Success, Inc.*, applies, and CST could not receive consideration of its petition. 20 N.E.3d at 155. As such, CST's petition should have been dismissed—if not by a motion filed by the BZA then by the trial court's own motion.

# Conclusion

[23] Finding that CST's failure to timely file the record, or request an extension of time in which to do so, required dismissal of its petition for writ of certiorari, we reverse the decision of the trial court and remand for dismissal of CST's petition.

[24] Reversed and remanded.

Kirsch, J., and Bailey, J., concur.